UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------x
ARCHIL BUGIANISHVILI,

                         Petitioner,

    -against-                                 1:15-cv-3360 (ALC)

                                      **OPINION & ORDER**

MCCONNELL et al.,

                       Respondents.
------------------------------------------------------------x

ANDREW L. CARTER, JR., United States District Judge:

## I.   INTRODUCTION

Under 8 U.S.C. § 1226(c), the government must detain a limited class of noncitizens without bond for the brief period pending removal proceedings. This case is about how long that period lasts before due process requires the government to justify continued detention by showing that the noncitizen is a flight risk or danger to his community. Archil Bugianishvili is a lawful permanent resident, detained without bond by Immigration and Customs Enforcement for the last eight months while contesting his removal in administrative proceedings. He petitions this Court for a writ of habeas corpus, seeking not immediate release, but rather a bond hearing with an Immigration Judge. Because Bugianishvili's detention has been unreasonably prolonged, the Court grants his petition.

## II.   BACKGROUND

    *a.  Arrest and Detention under 8 U.S.C. § 1226(c)*

Bugianishvili is a lawful permanent resident (LPR) who has lived in New York with his United States citizen wife and children since 2003. Petition ¶ 7. Prior to his current detention, he worked as a mechanic in Staten Island; his former employer wishes

to rehire him if he is released. Id. ¶ 18-19; Declaration of Employer ¶ 10. Between 2009 and 2014, Bugianishvili was arrested three times for shoplifting and pleaded guilty to attempted petit larceny, petit larceny, and criminal possession of stolen property under New York law. Petition ¶ 23. For those convictions, he was collectively sentenced to 30 days of incarceration and one day of community service. Id. His last release from criminal incarceration was in 2009. Id.

On October 28, 2014, agents from Immigration and Customs Enforcement (ICE) arrested Bugianishvili and transferred him to the Hudson County Jail in Kearney, New Jersey. Id. ¶ 25. ICE charged Bugianishvili with removability under 8 U.S.C. § 1227(a)(2)(A)(ii) of the Immigration and Nationality Act ("INA"). That statute declares removable "[a]ny alien who at any time after admission is convicted of two or more crimes involving moral turpitude ["CIMT"], not arising out of a single scheme of criminal misconduct." ICE alleged that Bugianishvili's shoplifting convictions were for CIMTs. Id.

Since his arrest eight months ago, ICE has detained Bugianishvili without bond at the Hudson County Jail pursuant to 8 U.S.C. § 1226(c). Id. ¶ 35. Section 1226(c) mandates detention without bond until the conclusion of removal proceedings of a noncitizen who "is deportable by reason of having committed any offense covered in section 1227 (a)(2)(A)(ii)"—the charge in Bugianishvili's case. Id. Notwithstanding ICE's claim that he is subject to mandatory detention, on April 30, 2015, Bugianishvili moved for a bond hearing in front of the Immigration Judge (IJ) presiding in his case at the Varick Street Immigration Court in New York City. Id. ¶ 37. The IJ denied his motion without considering the merits of his application, finding Bugianishvili subject to §

1226(c). Id. That same day, a little over six months after his arrest by ICE, his attorneys filed a habeas petition in the Southern District of New York.

### b. *Timeframe of removal proceedings*

Bugianishvili's first hearing in his removal proceedings took place on November 5, 2014, a week after his arrest by ICE. Id. ¶ 27. He moved to terminate proceedings, arguing that ICE had incorrectly classified New York's petit larceny as a CIMT and that the government could therefore not meet its burden to establish his removability. Id.[1] The IJ gave him until December 1, 2014 to submit papers in support of his motion. Id.

Eight days after Bugianishvili's first hearing, the IJ granted another respondent's motion to terminate removal proceedings on the grounds that petit larceny under New York Penal Law § 155.25 categorically is not a CIMT. Id. ¶ 28; Ex. G, Redacted Decision, Nov. 13, 2014 at 4 (citing People v. Medina, 18 N.Y.3d 98 (NY 2011)). But a month later, the IJ reached the opposite conclusion in Bugianishvili's case. Id. Ex. H, Bugianishvili Decision, Dec. 17, 2014 at 4 (citing People v. Parker, 466 N.Y.S.2d 700, 702 (App. Div. 1983); People v. Hoyt, 461 N.Y.S.2d 569, 570 (App. Div. 1983)). Finding that petit larceny under § 155.25 categorically is a CIMT, the IJ sustained the charge of

---

[1] The Board of Immigration Appeals ("BIA"), the administrative body charged with interpreting the INA, defines a CIMT as one that involves "'conduct that shocks the public conscience as being inherently base, vile, or depraved, and contrary to the accepted rules of morality and the duties owed between persons or to society in general.'" Wala v. Mukasey, 511 F.3d 102, 105-06 (2d Cir. 2007) (citing In re M-, 2 I. & N. Dec. 721, 723 (B.I.A.1946)). To assess whether a conviction is in fact for a CIMT, the BIA is required to use a categorical approach that "'look[s] to the elements and the nature of the offense of conviction, rather than to the particular facts relating to [the] petitioner's crime.'" Wala, 511 F.3d at 107 (citing Canada v. Gonzales, 448 F.3d 560, 565 (2d Cir.2006); Dalton v. Ashcroft, 257 F.3d 200, 204 (2d Cir.2001)).

removability. Id. at 5. Bugianishvili intends to appeal as soon as procedurally possible. Petition, Ex. E, Attorney Decl. ¶ 6.

In the meantime, he is seeking relief from removal via a waiver of inadmissibility for his convictions and adjustment of status, discretionary benefits granted by an IJ and based in part on a qualifying relationship to a United States citizen. Petition ¶ 31. Grants of the waiver and adjustment of status would terminate Bugianishvili's removal proceedings in his favor and allow him to remain in the United States as an LPR. A few days after the IJ's decision sustaining the charge of removability, Bugianishvili's citizen daughter initiated the adjustment of status process by filing an I-130 Petition for Alien Relative with United States Citizenship and Immigration Services ("USCIS") on her father's behalf. Id. ¶ 32. The purpose of the form is to establish the bona fides of the familial relationship. Id. USCIS issued a Notice of Receipt of the I-130 on January 6, 2015. Petition, Ex. E, ¶ 13. Bugianishvili submitted his applications for a waiver of inadmissibility and adjustment of status to the IJ on March 24, 2015. Petition ¶ 34. But the IJ would not consider the applications until USCIS approved the I-130. Id. ¶ 32.

Because Bugianishvili would remain detained without bond pending the IJ's decision on relief, his attorneys contacted USCIS to request expedited adjudication of the I-130. Petition, Ex. E ¶ 22. In addition, they asked the three rotating ICE attorneys assigned to Bugianishvili's proceedings, on five separate occasions, to contact USCIS to facilitate expedited adjudication. Id. Ex. E ¶ 11. After the third request, on February 24, 2015, an ICE attorney stated that USCIS had already been contacted. Id. Ex. E ¶ 16. But after the fourth request, on March 24, 2015, a different ICE attorney stated that USCIS could not adjudicate the I-130 until it had physical custody of the singular government

file related to Bugianishvili's case; as of that date, ICE had not yet transferred the file from its New York office to USCIS. Id. ¶ 18. The same ICE attorney rebuffed a fifth request on April 16, 2015 because she believed that the I-130 contained an error in Bugianishvili's identifying information, a claim his attorneys dispute. Id. ¶ 20-21. The issue became moot when, on April 24, 2015, USCIS rejected Bugianishvili's request to expedite the I-130 adjudication, stating that it does not view detention during removal proceedings as sufficient cause to do so. Petition, Ex. E ¶ 22.

On May 27, 2015, while Bugianishvili's habeas petition was pending before this Court, USCIS approved the I-130 petition six months after receiving it, enabling the IJ to consider the waiver and adjustment applications previously submitted in March 2015. ECF No. 15. The following week, the IJ set a date for a hearing on the applications: October 5, 2015. ECF No. 16.

### III. DISCUSSION

#### a. The Court has jurisdiction over Bugianishvili's habeas petition.

The government does not dispute jurisdiction in this case and it exists under 28 U.S.C. §§ 2241 (habeas) and 1331 (federal question). The INA bars federal courts from reviewing challenges to an IJ's discretionary decision regarding detention and bond. 8 U.S.C. § 1226(e). But Bugianishvili challenges instead "the statutory framework that permits his detention without bail." Demore v. Kim, 538 U.S. 510, 517 (2003). The Court has jurisdiction to hear that challenge. Id.

#### b. Legal background

"It is well established that the Fifth Amendment entitles aliens to due process of law in deportation proceedings." Reno v. Flores, 507 U.S. 292, 306 (1993). It is equally

undisputed that "[f]reedom from imprisonment—from government custody, detention, or other forms of physical restraint—lies at the heart of the liberty that [the Fifth Amendment's Due Process] Clause protects." Zadvydas v. Davis, 533 U.S. 678, 690 (2001). Nonetheless, under certain circumstances, the Supreme Court "has recognized detention during deportation proceedings as a constitutionally valid aspect of the deportation process." Demore at 523.

The INA provision that ordinarily governs detention during removal proceedings, 8 U.S.C. § 1226(a), commits to the Attorney General's discretion whether to detain a respondent during removal proceedings "[e]xcept as provided in subsection (c). . . ." The § 1226(c) exception mandates that "[t]he Attorney General shall take into custody any alien who . . . is deportable by reason of having [two convictions for CIMTs not arising out of a single scheme of criminal misconduct] . . . when the alien is released" from criminal incarceration underlying the government's charge of removability.

In Demore v. Kim, an LPR who had been convicted of two CIMTs and conceded his removability brought a facial constitutional challenge to § 1226(c). Demore at 510. The District Court found the statute facially unconstitutional and the Ninth Circuit narrowed that holding as applicable only to LPRs. Kim v. Ziglar, 276 F.3d 523, 526 (9th Cir. 2002) rev'd sub nom. Demore v. Kim, 538 U.S. 510. On appeal, the Supreme Court reversed, holding that Congress "may require that persons such as respondent be detained for the brief period necessary for their removal proceedings." Demore at 513. By "persons such as respondent," the Court specified that it referred to "a criminal alien who has conceded that he is deportable." Id. at 531. The "brief period" envisioned by the Court "lasts roughly a month and a half in the vast majority of cases" and "about five

months in the minority of cases in which the alien chooses to appeal." Id. at 530. The Demore petitioner himself, who had filed for habeas after three months of detention and was released upon order of the District Court after six months, also fell within that period. Id. at 531, n.15.

Demore discussed and distinguished a prior Supreme Court holding on the constitutionality of immigration detention in Zadvydas v. Davis, 533 U.S. 678. Zadvydas dealt not with § 1226(c) detention during removal proceedings, but with 8 U.S.C. § 1231, which allows the government to detain a noncitizen without bond beyond the 90 days following a final order of removal if for the purpose of facilitating actual removal from the United States. Id. The Zadvydas petitioners had been ordered removed, but when no other country would accept them, the government interpreted § 1231 to authorize their indefinite detention. Id. at 684-87. To avoid the serious Due Process Clause concerns raised by that interpretation, the Court construed the statute to contain an implicit six-month limit to detention without bond for a noncitizen under a final order of removal whose actual removal is not reasonably foreseeable. Id. at 690, 701. The Zadvydas holding rested on the premise that when "detention's goal is no longer practically attainable, detention no longer bears a reasonable relation to the purpose for which the individual was committed." Demore at 527 (citing Zadvydas, 533 U.S. at 690). Unlike the indefinite, post-removal order § 1231 detention in Zadvydas which could no longer facilitate the petitioners' actual removal, the limited § 1226(c) detention pending removal proceedings in Demore was facially constitutional because it was reasonably related to its purpose: "preventing deportable criminal aliens from fleeing prior to or during their

removal proceedings, thus increasing the chance that, if ordered removed, the aliens will be successfully removed." Demore at 528.

While the Demore majority opinion upheld the constitutionality of § 1226(c) both facially and as applied specifically to the respondent, Justice Kennedy's concurrence briefly addressed the circumstances under which that conclusion could change.

> [S]ince the Due Process Clause prohibits arbitrary deprivations of liberty, a lawful permanent resident alien such as respondent could be entitled to an individualized determination as to his risk of flight and dangerousness if the continued detention became unreasonable or unjustified. . . . Were there to be an unreasonable delay by the INS in pursuing and completing deportation proceedings, it could become necessary then to inquire whether the detention is not to facilitate deportation, or to protect against risk of flight or dangerousness, but to incarcerate for other reasons.

Demore at 532-33 (Kennedy, J. concurring).

Thus, under Justice Kennedy's analysis, when detention under § 1226(c) is unreasonable or unjustified, a bond hearing is required. The surest sign of unreasonable detention is unreasonable delay by the government in pursuing and completing removal proceedings.

Bugianishvili argues that under Justice Kennedy's analysis, his detention has become unreasonably prolonged. The Court agrees.[2]

---

[2] Bugianishvili presents two other arguments as to why he is entitled to a bond hearing, alleging both violations of the INA and the Due Process Clause. First, because § 1226(c) applies only to a noncitizen who "is deportable" by virtue of criminal conviction, it does not apply to a respondent who has substantial challenges to removal. By "substantial challenges," Bugianishvili means someone who has substantial arguments that he is not properly charged as removable or that he is eligible for relief from removal. He challenges the constitutional sufficiency of the process afforded to him in a post-arrest hearing where the IJ confirmed ICE's designation of him as "deportable" under § 1226(c). See Matter of Joseph, 22 I&N Dec. 799 (BIA 1999).

Second, because § 1226(c) applies only to a noncitizen who is detained by ICE "when . . . released" from previous criminal incarceration, it does not apply to someone who was detained after a significant gap from release. By "significant gap from release" Bugianishvili means either the five-year gap since his last incarceration or the eight-month gap since his last arrest, depending on the definition of release applied. Courts in

> c. *The standard for assessing an unreasonably prolonged period of detention under § 1226(c)*

Since Demore, three circuit courts have addressed when § 1226(c) detention becomes unreasonably prolonged. The Ninth Circuit interpreted § 1226(c) to adopt a brightline presumption that "the government's statutory mandatory detention authority . . . [i]s limited to a six-month period, subject to a finding of flight risk or dangerousness." Rodriguez v. Robbins, 715 F.3d 1127, 1133 (9th Cir. 2013). Past the six-month mark, a respondent in the Ninth Circuit automatically shifts from § 1226(c) mandatory detention to § 1226(a) discretionary detention, leaving it to immigration authorities rather than federal courts to conduct an individualized inquiry as to whether detention is reasonably related to preventing flight or safeguarding the community. Rodriguez, 715 F.3d at 1138.

Both the Sixth and Third Circuits adopted standards that examine the particular facts and circumstances of each case. The Sixth Circuit rule, succinctly stated, is "when actual removal is not reasonably foreseeable, criminal aliens may not be detained beyond a reasonable period required to conclude removability proceedings without a government showing of a 'strong special justification,' constituting more than a threat to the

---

this district are split as to whether the "when . . . released" clause requires that ICE detain at, around, or within a reasonable time after release from criminal custody or whether it may do so at any point after release. See Minto v. Decker, 2015 WL 3555803, at *3 (S.D.N.Y. June 5, 2015) (listing decisions that split on the meaning of "when"). Three circuits have held that § 1226(c) does not mandate detention immediately upon release from criminal custody. Olmos v. Holder, 780 F.3d 1313, 1323 (10th Cir. 2015); Sylvain v. Attorney Gen., 714 F.3d 150, 156–61 (3d Cir.2013); Hosh v. Lucero, 680 F.3d 375, 378–84 (4th Cir.2012). This Circuit has heard oral argument on the issue, but not yet issued an opinion. See Lora v. Shanahan, 15 F.Supp.3d 478, appeal docketed, No. 14-2343 (2d Cir. June 26, 2014).

Because the Court finds that Bugianishvili's detention is unreasonably prolonged, it declines to address his other arguments.

community, that overbalances the alien's liberty interest." Ly v. Hansen, 351 F.3d 263, 273 (6th Cir. 2003). Factors that address whether the detention period is reasonable include the comparative length of a respondent's criminal and immigration incarceration, whether the respondent's detention is reasonably related to the statute's goals, whether the government has "drag[ged] its heels" in the removal proceedings, and whether the respondent has engaged in dilatory tactics. Id. at 271-272.

The Third Circuit rule "authorizes detention for a reasonable amount of time, after which the authorities must make an individualized inquiry into whether detention is still necessary to fulfill the statute's purposes of ensuring that an alien attends removal proceedings and that his release will not pose a danger to the community." Diop v. ICE/Homeland Sec., 656 F.3d 221, 231 (3d Cir. 2011). Factors defining a reasonable amount of time include whether the respondent has been detained "for significantly longer than" the brief period of a month and a half to five months mentioned in Demore. Id. at 233-34. Most recently, the Third Circuit characterized nine months as "straining any common-sense definition of a limited or brief civil detention." Chavez-Alvarez v. Warden York Cnty. Prison, 783 F.3d 469, 477 (3d Cir. 2015).

In addition to the sheer length of detention, the Third Circuit looks for "errors in the proceedings that cause unnecessary delay." Diop, 656 F.3d at 234. Such delay, even if attributable to innocent mistakes that are individually reasonable, "can nevertheless result in the detention of a removable alien for an unreasonable, and ultimately unconstitutional, period of time." Id. at 223. Moreover, where a respondent's challenge to his removability presents real issues—"for example: a genuine factual dispute; poor legal reasoning; reliance on a contested legal theory; or the presence of a new legal issue"—delay

attributed to contesting those issues "does not undermine his ability to claim that his detention is unreasonable." Chavez-Alvarez, 783 F.3d at 477 (3d Cir. 2015).

The Second Circuit has yet to speak on when detention becomes unreasonably prolonged. District courts in this Circuit have almost all opted for a fact-dependent inquiry. See Johnson v. Orsino, 942 F. Supp. 2d 396, 407 (S.D.N.Y. 2013) (finding detention not unreasonably prolonged under fact-dependent inquiry); but see Gordon v. Shanahan, 2015 WL 1176706, at *4 (S.D.N.Y. Mar. 13, 2015) (prolonged detention unconstitutional under both a six-month brightline test and a fact-dependent inquiry). Those courts looking to the facts of each case typically assess three factors: "which party bears responsibility for the prolonged detention, whether the continued duration of the detention is finite or near conclusion, and the interests served by continued detention." The last factor is sometimes referred to as whether continued detention is "justified." Araujo-Cortes v. Shanahan, 35 F. Supp. 3d 533, 537 (S.D.N.Y. 2014) (finding that a 6-month detention violated the Due Process clause); Johnson v. Orsino, 942 F. Supp. 2d at 407 (using the same factors, finding that a 15-month detention did not violate the Due Process Clause).

At oral argument, Bugianishvili's attorneys suggested that implementing a six-month brightline limit to detention without bond would ameliorate problems with the fact-based inquiry that have led to inconsistent results in this Circuit. See Transcript at 44; compare Araujo-Cortes, 35 F. Supp. 3d at 537 (detention unreasonably prolonged at six months) with Luna-Aponte v. Holder, 743 F. Supp. 2d 187, 189 (W.D.N.Y. 2010) (detention not unreasonably prolonged at three years and three months). The Court need not decide which test is appropriate, however, because under both a brightline rule and a

fact-dependent inquiry, Bugianishvili's detention has become unreasonably prolonged. See Gordon, 2015 WL 1176706, at *4 (detention unreasonably prolonged under both a six-month brightline test and a fact-dependent inquiry).

> d. *Bugianishvili's § 1226(c) detention is unreasonably prolonged.*

Bugianishvili has now been detained for nearly eight months, an unreasonably prolonged period under a six-month brightline rule.

Examination of the facts and circumstances of this case also shows that Bugianishvili's detention is unreasonably prolonged. Bugianishvili's civil immigration detention is now nearly eight times longer than the criminal incarceration underlying the government's charge of removability. See Ly, 351 F.3d at 271. Indeed, his nearly eight-month detention approaches the nine-month mark in Chavez-Alvarez that "strain[ed] any common-sense definition of a limited or brief civil detention." Chavez-Alvarez, 783 F.3d at 477.

The government attempts to assign responsibility for the delay in proceedings to Bugianishvili, citing several cases from this Circuit wherein a noncitizen's appeal of his case undermined the claim that his prolonged detention was unreasonable. See Baker v. Johnson, 2015 WL 2359251, at *13 (S.D.N.Y. May 15, 2015); Debel v. Dubois, 2014 WL 1689042, at *6 (S.D.N.Y. Apr. 24, 2014); Johnson v. Orsino, 942 F. Supp. 2d at 408-411; Johnson v. Phillips, 2010 WL 6512350, at *6-7 (W.D.N.Y. Dec. 20, 2010); Luna-Aponte v. Holder, 743 F. Supp. 2d 189, 197. But these cases addressed noncitizens appealing final orders of removal in the final stages of their proceedings, whereas Bugianishvili's proceedings, relatively speaking, have just begun. His case—and detention—could continue for an indefinitely long period of time. His next hearing, still

four months away, may not even be the last one before the IJ. Should he receive an order of removal, he has the right to appeal first to the BIA and then to the Second Circuit. Given the bona fide questions of state law in his case, certification to the New York Court of Appeals is also foreseeable.

Though two cases cited by the government dealt with respondents seeking relief from removal, unlike Bugianishvili those respondents did not contest their removability, thus reducing the likelihood of prolonged appeals and detention. Andreenko v. Holder, 2010 WL 2900363, at *3-4 (S.D.N.Y. June 25, 2010); Adler v. U.S. Dep't of Homeland Sec., 2009 WL 3029328, at *2 (S.D.N.Y. Sept. 22, 2009). In addition, the relief sought in those cases, as well as in Demore—withholding from removal—differs materially from the relief Bugianishvili seeks. Withholding results in an actual order of removal that the government may not enforce due to treaty obligations barring return of a noncitizen to a country where he would face persecution. See Negusie v. Holder, 555 U.S. 511, 536 (2009) (Stevens, J., concurring in part and dissenting in part). Adjustment of status results in a grant of lawful permanent residence. "[O]nce an alien gains admission to our country and begins to develop the ties that go with permanent residence his constitutional status changes accordingly." Landon v. Plasencia, 459 U.S. 21, 32 (1982). No case cited by the government condones penalizing an LPR with mandatory detention for advancing bona fide arguments that, if accepted, would result in maintenance of his constitutionally privileged status.

In any event, pursuit of relief from removal does not, in itself, undermine a claim that detention is unreasonably prolonged. The government cites to Doherty v. Thornburgh, 943 F.2d 204, 211 (2d Cir. 1991) for the proposition that a noncitizen "may

not rely on the extra time resulting [from pursuit of legal remedies] to claim that his prolonged detention violates substantive due process." Doherty v. Thornburgh, 943 F.2d 204, 211 (2d Cir. 1991). But the petitioner's continued detention in Doherty was valid because he had received a bond hearing and been deemed "an exceptionally poor bail risk." Id. Doherty thus supports rather than undermines Bugianishvili's argument.

Indeed, the mere fact that a noncitizen opposes his removal, without distinguishing between bona fide and frivolous arguments in opposition, is insufficient to defeat a finding of unreasonably prolonged detention. Such a failure to distinguish overlooks a key fact in a fact-dependent inquiry. See Chavez-Alvarez, 783 F.3d at 477 (noting that while the respondent "undoubtedly is responsible for choosing to challenge his removal by raising complicated issues that have taken a lot of time to argue and decide . . . this does not undermine his ability to claim that his detention is unreasonable."); cf. Gordon v. Shanahan, 2015 WL 1176706, at *5 (S.D.N.Y. Mar. 13, 2015) ("Moreover, it would be unreasonable to penalize Mr. Gordon for exercising his right to challenge removal by requiring him to be detained while he exercises that right . . . ."). That key fact went unmentioned in all of the government's cited cases save two, where meritless arguments counted against the noncitizen. Johnson v. Orsino, 942 F. Supp. at 411 (noting that the petitioner "has made no showing that his appeal to the BIA has merit"); Andreenko, 2010 WL 2900363, at *4 (stating that because "the probability of the petitioner's success in . . . attempts to vacate his previous convictions is speculative, . . . his likelihood of avoiding removal on this basis is too remote to warrant habeas relief").

Without expressing an opinion as to the ultimate merits of Bugianishvili's arguments in his removal proceedings, for purposes of his habeas claim the Court notes that they are not frivolous. See Hyppolite v. Enzer, 2007 WL 1794096, at *1 (D. Conn. June 19, 2007) ("While petitioner is not certain to receive the relief of cancellation of removal which he seeks before the Executive Office of Immigration Review, he appears reasonably likely to receive such relief in light of the equities evidenced in the undisputed documents presented to this Court."). Speaking to relief from removal, Bugianishvili is an LPR with a United States citizen wife and children. He has a relatively minor criminal record stemming from three shoplifting convictions, two of them from more than five years ago. And he has a standing offer of employment upon his release from detention. If Bugianishvili's applications for relief are denied, he also has nonfrivolous legal arguments on appeal that he is not removable as charged. Within the span of a month, the IJ presiding in his case issued two contradictory decisions as to whether New York petit larceny is a CIMT. The very fact that the same IJ reached opposite conclusions in the absence of intervening case law indicates that the issue is a close one.[3]

In short, the delay in Bugianishvili's removal proceedings cannot fairly be attributed to him. If anything, he has attempted to speed things along by requesting expedited adjudication of the I-130 petition and filing early applications for a waiver of inadmissibility and adjustment of status with the IJ. In contrast, there is evidence of government delay. In pointing to this evidence, the Court does not assume that delay was

---

[3] Bugianishvili also points to Second Circuit case law in support of his nonfrivolous argument that he is not removable as charged. See Wala v. Mukasey, 511 F. 3d 102, 106 (holding that Connecticut's larceny statute is not a CIMT); Obeya v. Holder, 572 Fed. App'x. 34, 35 (2d Cir. 2014) (remanding to the BIA to determine whether, in light of Wala, New York petit larceny is a CIMT).

intentional, bearing in mind that even innocent, reasonable errors may collectively result in unreasonable detention. See Diop, 656 F.3d at 223. Two such actions on the part of ICE inform the Court's decision here. First, the ICE attorneys on rotating duty at Bugianishvili's removal hearings gave conflicting answers as to whether ICE had contacted USCIS to expedite adjudication of the I-130, indicating a lack of coordination that may have led to delay. Second, four months after Bugianishvili's attorneys filed the I-130 petition, one ICE attorney suggested that ICE had yet to forward his file to USCIS, preventing its adjudication.

Further, and independent of any delay on ICE's part, USCIS stated a policy that detention is not sufficient reason for expedited adjudication of an I-130. As a result, no decision on the petition was forthcoming for six months and the IJ was unable to consider Bugianishvili's otherwise complete applications for relief in a timely manner. While the government concedes that some delay in Bugianshvili's removal proceedings is attributable to USCIS's bureaucratic process, it urges the Court to distinguish between delay caused by ICE on the one hand and USCIS on the other. The Court declines to do so. In fact, Justice Kennedy's Demore concurrence referred to delay caused by "INS," the former agency whose responsibilities were divided between ICE and USCIS under the umbrella Department of Homeland Security ("DHS"). See Demore at 532; Clark v. Martinez, 543 U.S. 371, n.1 (2005) (citing Homeland Security Act of 2002, 6 U.S.C. 271(b)). Thus, it makes no difference whether delay came from USCIS or ICE; in either event, it is not fairly attributable to Bugianishvili.

Finally, the government has made no attempt to justify Bugianishvili's continued detention. The purpose of § 1226(c) is to "prevent[] deportable criminal aliens from

fleeing prior to or during their removal proceedings, thus increasing the chance that, if ordered removed, the aliens will be successfully removed." Demore at 528. Other courts have noted an additional purpose of preventing danger to the community. Diop, 656 F.3d at 231. The Court expresses no opinion as to whether Bugianishvili ultimately should receive bond; other facts not presented here may weigh on that determination. Nonetheless, the available evidence on this habeas petition, uncontested, indicates that Bugianishvili has substantial incentives not to flee his removal proceedings. Victory would allow him to remain in the United States as an LPR, alongside his citizen wife and children, with permission to work at the company that employed him prior to his detention. Flight would result in an in absentia order of removal that would bar him those benefits. Similarly, no record facts indicate that he would be a danger to his community. Bugianishvili's convictions were for nonviolent offenses. To the extent that his criminal sentences reflect the state's judgment of his dangerousness, the longest sentence of incarceration he received was for less than three weeks. His most recent conviction resulted only in a conditional discharge and a day of community service. Accordingly, the government's interests in Bugianishvili's continued detention without a bond hearing, left unaddressed by government counsel, appear slight.

   e. *Bugianishvili's prolonged detention without a bond hearing is unconstitutional.*

Notwithstanding "the fact that substantive due process claims are rarely granted," Fuller v. Gonzales, 2005 WL 818614, at *6 (D. Conn. Apr. 8, 2005), courts in this Circuit that have granted writs of habeas based on prolonged detention have ordinarily done so on the basis of constitutional, rather than statutory reasoning. Id.; Minto v. Decker, 2015 WL 3555803, at *5 (S.D.N.Y. June 5, 2015); Gordon v. Shanahan, 2015 WL 1176706, at

*5; Araujo-Cortes v. Shanahan, 35 F. Supp. 3d at 550. But see Monestime v. Reilly, 704 F. Supp. 2d 453, 458-59 (S.D.N.Y. 2010) (finding continued detention without bond unauthorized by statute). This Court joins the majority of courts in this Circuit by finding that Bugianishvili's unreasonably prolonged detention without a bond hearing violates the Fifth Amendment's Due Process Clause. Because "the Due Process Clause prohibits arbitrary deprivations of liberty," Bugianishvili, after "unreasonable delay by the [DHS] in pursuing and completing deportation proceedings," is "entitled to an individualized determination as to his risk of flight and dangerousness." Demore at 532 (Kennedy, J. concurring).

## IV.  CONCLUSION

For the foregoing reasons, Archil Bugianishvili's detention without a bond hearing was unreasonably prolonged when he brought his habeas petition and continues to be so. Respondents are ordered to provide him with a bond hearing within seven days of this order. The Clerk of Court is requested to enter judgment accordingly and close this case.

**SO ORDERED.**

Dated:   New York, New York
         June 24, 2015

_____
ANDREW L. CARTER, JR.
United States District Judge